## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **PRINCE RICHARD, # R-17418,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 16-cv-00069-NJR** |
| | ) | |
| **ILLINOIS DEPT. OF CORRECTIONS,** | ) | |
| **C. GLADYSE TAYLOR, PAYNE,** | ) | |
| **WEXFORD HEALTH SOURCES, INC.,** | ) | |
| **TROST, JOHN DOE,** | ) | |
| **and KIMBERLY BUTLER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM AND ORDER</u>

**ROSENSTENGEL, District Judge:**

Plaintiff Prince Richard, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for the deprivation of his constitutional rights at Menard. In the Complaint, Plaintiff claims that he suffered serious injuries when he fell from his top bunk at Menard on January 18, 2015. (Doc. 1, pp. 5-32). According to Plaintiff, the fall could have been avoided, if his bunk bed had a ladder or steps. His injuries allegedly remain untreated.

Plaintiff now sues the Illinois Department of Corrections (IDOC), Gladyse Taylor (IDOC Acting Director), Wexford Health Sources, Inc. (Wexford), Kimberly Butler (Menard's warden), Doctor Trost (prison doctor), Nurse John Doe (unknown nurse practitioner), and Counselor Payne for violating his rights under the First, Eighth, and Fourteenth Amendments. He seeks

monetary damages, a CT scan, and "class action[1] injunctive relief" in the form of a court order requiring all IDOC facilities to install ladders on bunk beds. (*Id.* at 33).

Plaintiff originally filed this action on January 21, 2016. (Doc. 1). At the time of doing so, he failed to pay the $400.00 filing fee or file a Motion for Leave to Proceed *In Forma Pauperis* ("IFP motion"). In a letter dated January 21, 2016, the Clerk of Court advised Plaintiff of his obligation to prepay the full fee or file an IFP motion seeking permission to proceed as a poor person. (Doc. 4). He was given thirty days to comply with this requirement and warned that the case would be dismissed if Plaintiff failed to do so by February 20, 2016. (*Id.*).

On February 19, 2016, Plaintiff filed a Notice Regarding Filing Fee (Doc. 5), in which he indicated that he "sent the money" to the Court on January 21, 2016. The Court had not received the filing fee or any portion of it. Therefore, on February 23, 2016, the Court entered a Notice of Impending Dismissal. (Doc. 7). In the Notice, Plaintiff was given until March 7, 2016, to pay the full filing fee or file a properly completed IFP motion. (*Id.* at 2). He was warned that failure to comply with the order would result in dismissal of this action for want of prosecution and/or for failure to comply with a court order under Federal Rule of Civil Procedure 41(b). (*Id.*). The Court refrained from screening the Complaint under 28 U.S.C. § 1915A, while awaiting receipt of payment or an IFP motion.

Plaintiff responded by filing a Motion to Compel Menard to Send His Filing Fee on March 3, 2016. (Doc. 8). This motion was followed by Plaintiff's payment of the full $400.00 filing fee on March 7, 2016. Timely payment of the filing fee renders the pending Motion to

---

[1] The Court does not construe Plaintiff's passing reference to a "class action" in the Complaint (*Id*. at 33) as a formal request for class certification. The Complaint contains no other indication that Plaintiff intended to bring a class action lawsuit. Prince Richard is the only plaintiff named in the case caption and the only individual who signed the Complaint (Doc. 1), Motion for Recruitment of Counsel (Doc. 2), and several other fee-related motions (Docs. 5, 8, 9). Further, a prisoner bringing a *pro se* action cannot represent a class of plaintiffs. *See Lewis v. Lenc-Smith Mfg. Co.*, 784 F.2d 829, 831 (7th Cir. 1986); FED. R. CIV. P. 11.

Compel (Doc. 8) moot and the Complaint (Doc. 1) is ripe for preliminary review under 28 U.S.C. § 1915A.

## Merits Review Under 28 U.S.C. § 1915A

This case is now before the Court for review of the Complaint pursuant to § 1915A. Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The Complaint survives preliminary review under this standard.

## The Complaint

Plaintiff is currently incarcerated at Menard, where he describes the living conditions as generally overcrowded. (Doc. 1, pp. 5-32). The prison's cells were allegedly designed in 1878 for use by one inmate, but each cell is now used to house two inmates. To accommodate them, the prison has installed bunk beds in each cell. These beds have no ladder or steps.

Inmates who are assigned a top bunk must resort to more creative measures to climb into their beds. Plaintiff describes a technique more often used by arboreal creatures, in which he first steps on the toilet and climbs onto the sink before leaping across the cell into his bed. (*Id*. at 5-6). The toilet, sink, and bed are not designed for use in this manner. High level prison officials, including the IDOC, Acting Director Taylor, Warden Butler, Wexford, and Doctor Trost, are well aware of these conditions but refuse to address the safety hazard. (*Id*. at 6).

On January 18, 2015, Plaintiff fell as he jumped from the sink to the bed. (*Id*. at 35). He hit his head and face on the property box and almost "put[ ] his eye out." (*Id*. at 6). He cut his

head and suffered pain, blurred vision, dizziness, and light sensitivity thereafter. (*Id*. at 8). Plaintiff maintains that a ladder or steps would have prevented his fall. (*Id*. at 6).

He immediately alerted prison officials to his injuries and was taken to Menard's Health Care Unit ("HCU"). (*Id*. at 7). Doctor Trost, Nurse Doe, and other members of the medical staff provided Plaintiff with a "basic amount of medical care," but no evaluation for a concussion or any other diagnostic testing. (*Id*. at 7, 12-13). Plaintiff was given Tylenol for his head pain and headaches. (*Id*. at 7). The Tylenol proved to be ineffective at controlling Plaintiff's headaches and dizziness, but all other forms of pain medication were denied. Plaintiff blames this denial on Wexford's policy of treating pain–regardless of severity–with generic Tylenol, Motrin, or Ibuprofen. (*Id*. at 7, 11). Plaintiff also complains that he was repeatedly charged a co-pay of $5.00 for this ineffective treatment.[2] (*Id*. at 10, 16).

After he fell, Plaintiff asked that a ladder or steps be installed near his bed. (*Id*. at 17). Doctor Trost, Nurse Practitioner Doe, and Wexford refused to provide either. They also refused to issue Plaintiff a low bunk permit or a medical permit for housing in a low gallery. (*Id*. at 18). They informed Plaintiff that he did not qualify for either permit, despite suffering from headaches, dizziness, and vertigo from his prior fall. (*Id*. at 18-19). Rather than being transferred to a low gallery, Plaintiff was moved to the top floor, where he alleges the risk of injury is even greater. (*Id*. at 19).

The IDOC, Acting Director Taylor, Warden Butler, and Wexford received "countless" complaints from inmates, including Plaintiff, about the above-described conditions of confinement and denial of adequate medical care. (*Id*. at 16). Plaintiff had his family call the

---

[2] An inmate's constitutional rights are not violated by the collection of a fee for prison medical services. Whether or not a statutory exemption should apply to the co-payment rule is a question of state law, not cognizable in a § 1983 action. *Poole v. Isaacs*, 703 F.3d 1024, 1027 (7th Cir. 2012) ("[T]he imposition of a modest fee for medical services, standing alone, does not violate the Constitution.").

prison to complain about the conditions and request proper medical care on his behalf. (*Id*. at 24). Rather than investigating these complaints, the defendants "turned a blind eye" to them. (*Id*. at 6, 10-11, 27-30). Warden Butler allegedly ignored each of Plaintiff's emergency grievances and letters. (*Id*. at 22-23). Plaintiff spoke directly to Counselor Payne about his grievances, but the counselor only yelled and threatened to send him to segregation if he filed any more complaints. (*Id*. at 25-26). When Plaintiff continued to do so, Counselor Payne simply ignored them. (*Id*. at 27-30).

<u>Discussion</u>

The Court finds it convenient to divide the Complaint into the following enumerated counts. The organization of these counts should not be construed as an opinion regarding their merits. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1:** **Defendants subjected Plaintiff to unconstitutional conditions of confinement at Menard in violation of the Eighth Amendment when they assigned him to a top bunk that lacked a ladder and steps.**
>
> **Count 2:** **Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they failed to treat the injuries he sustained after falling from the top bunk on January 18, 2015.**
>
> **Count 3:** **Defendants exhibited deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment when they refused to issue him a low bunk or low gallery permit after he fell from the top bunk on January 18, 2015.**
>
> **Count 4:** **Defendants denied Plaintiff access to the courts by ignoring his grievances and thereby preventing him from exhausting his administrative remedies before bringing this action.**

As discussed in more detail below, **Counts 1** and **4** are subject to dismissal without prejudice. **Count 2** is subject to further review against Defendants Acting Director Taylor,

Warden Butler, Doctor Trost, Nurse Doe, Counselor Payne, and Wexford. **Count 3** is subject to further review against Defendants Acting Director Taylor, Warden Butler, Doctor Trost, Nurse Doe, and Counselor Payne. The IDOC shall be dismissed without prejudice from this action.

## Claims Subject to Further Review

### Counts 2 and 3–Medical Needs Claims

The Eighth Amendment to the United States Constitution protects prisoners from cruel and unusual punishment. *See Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*). To state a claim, a prisoner must show that: (1) he suffered from an objectively serious medical need; and (2) state officials acted with deliberate indifference to the prisoner's medical need, which is a subjective standard. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

The Seventh Circuit has held that a medical need is "serious" where it has either "been diagnosed by a physician as mandating treatment" or where the need is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir. 1997). The unrelenting headaches, dizziness, and vertigo described in the Complaint satisfy the objective component of Counts 2 and 3 for screening purposes, however, the analysis of these claims does not end there.

The Complaint also must satisfy the subjective component of these claims. To do so, the Complaint must suggest that the defendants exhibited deliberate indifference to Plaintiff's

serious medical need. Deliberate indifference is established when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).

This standard is satisfied with respect to Count 2 against Doctor Trost, Nurse Doe, Wexford, Acting Director Taylor, Warden Butler, and Counselor Payne. According to the Complaint, the medical care providers (Doctor Trost and Nurse Doe) knowingly provided ineffective treatment for Plaintiff's head injury, headaches, dizziness and/or vertigo, offering Plaintiff Tylenol and nothing else. The medical corporation (Wexford) instituted the policy that resulted in the decision to deny Plaintiff all other forms of treatment for his head injury and pain. Finally, the grievance defendants (Acting Director Taylor, Warden Butler, and Counselor Payne) were made aware of Plaintiff's ineffective treatment in detailed grievances and decided to "turn a blind eye" to the complaints. These allegations support a claim of deliberate indifference under Count 2 against Doctor Trost, Nurse Doe, Wexford, Acting Director Taylor, Warden Butler, and Counselor Payne.

The standard is also satisfied with respect to Count 3 against Doctor Trost, Nurse Doe, Acting Director Taylor, Warden Butler, and Counselor Payne. The medical providers (Doctor Trost and Nurse Doe) allegedly denied Plaintiff's direct requests for a low bunk or low gallery permit after he fell from the top bunk on January 18, 2015. The medical corporation (Wexford) had nothing to do with this decision, and this claim is subject to dismissal without prejudice against Wexford. Finally, the grievance defendants (Acting Director Taylor, Warden Butler, and Counselor Payne) allegedly ignored Plaintiff's repeated complaints about the denial of these permits. These allegations support a claim of deliberate indifference under Count 3 against

Doctor Trost, Nurse Doe, Acting Director Taylor, Warden Butler, and Counselor Payne, but not Wexford.

The IDOC is also named in connection with these claims. Both Counts 2 and 3 shall be dismissed with prejudice against this defendant. The IDOC is a state government agency. The Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001) (Eleventh Amendment bars suits against the states in federal court for money damages); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) (state Department of Corrections is immune from suit by virtue of Eleventh Amendment); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 427 (7th Cir. 1991) (same). Plaintiff cannot bring his claim for money damages against the IDOC, and the injunctive relief he requests (*i.e.*, a CT scan) can be carried out by Menard's warden, Defendant Butler, if it is ordered. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (when injunctive relief is sought, it is generally appropriate to name the government official who is responsible for carrying out the requested relief, in his or her official capacity).

In summary, **Count 2** shall receive further review against Doctor Trost, Nurse Doe, Wexford, Acting Director Taylor, Warden Butler, and Counselor Payne. **Count 3** shall receive further review against Doctor Trost, Nurse Doe, Acting Director Taylor, Warden Butler, and Counselor Payne; this claim is considered dismissed without prejudice against Wexford. Finally, Counts 2 and 3 are dismissed with prejudice against the IDOC.

**Claims Subject to Dismissal**

**Count 1–Conditions of Confinement**

Plaintiffs asserting an Eighth Amendment claim for unconstitutional conditions of confinement must allege that they were incarcerated under conditions posing a "substantial risk of serious harm," and that prison officials had subjective knowledge of the risk, yet consciously disregarded it. *Grieveson v. Anderson*, 538 F.3d 763, 775 (7th Cir. 2008). The risk posed by bunk beds that have no ladder or steps is not substantial. *See Withers v. Wexford Health Sources, Inc.*, 710 F.3d 688, 691-92 (7th Cir. 2013) (collecting cases) ("absence of ladders is a common feature of prison bunk beds"). Courts have routinely dismissed such claims, after finding that this condition does not pose a serious risk of harm. *See, e.g., Leggero v. Tact*, No. 10 C 50243, 2010 WL 5135910 (N.D. Ill. 2010) (citing *Robinett v. Corr. Training Facility*, No. C 09-3845 SI (pr), 2010 WL 2867696, at *2 (N.D. Cal. July 20, 2010) (concluding on § 1915A review that a failure to provide a ladder to top bunk inmates does not satisfy objective or subjective prongs of an Eighth Amendment claim); *Brown v. Anderson*, C/A No. 09-2632-JFA-WMC, 2010 WL 199692, at *2 (D.S.C. Jan. 13, 2010) (finding no § 1983 deliberate indifference cause of action for a claim that the defendants failed to provide a safe way for plaintiff to get into six-foot high upper bunk); *Jones v. La. Dept. of Public Safety and Corr.*, No. 08-cv-1507, 2009 WL 1310940, *2 (W.D. La. May 11, 2009) (dismissing on § 1915A review a claim for a prisoner injured when his foot slipped on cell bars he had to climb to reach his upper bunk because such a condition did not satisfy objective prong of Eighth Amendment test); *Connolly v. County of Suffolk*, 533 F. Supp. 236, 241 (D. Mass. 2008) (absence of ladders on bunk beds did not amount to the deprivation of a minimal civilized measure of life's necessities). The absence of a ladder or steps on a bunk bed

is not a sufficiently serious condition to support a § 1983 claim. Accordingly, **Count 1** shall be dismissed without prejudice.

**Count 4–Access to Courts**

The Complaint also supports no claim against the defendants for denying Plaintiff's access to the courts by impeding his ability to exhaust his administrative remedies before filing suit. To begin with, an actual or threatened detriment is an essential element of a § 1983 claim for denial of access to the courts. *Howland v. Kilquist*, 833 F.2d 639, 642-43 (7th Cir. 1987); *Hossman v. Sprandlin*, 812 F.2d 1019, 1021 (7th Cir. 1987). However, the Complaint alludes to no actual or potential limitation on Plaintiff's ability to file this action or any other. Given the fact that Plaintiff filed this action well within the applicable statute of limitations, the Court can discern no actual or potential barrier to his claims that was caused by the defendants.

Moreover, a denial of access claim does not arise from the defendants' disregard of Plaintiff's grievances in this context. While it is true that a prisoner is required to exhaust all available administrative remedies before filing suit, the exhaustion requirement is deemed satisfied (*i.e.*, there is no impediment to suit) where the administrative grievance process is rendered unavailable by the conduct of prison officials. *See* 42 U.S.C. § 1997e(a); *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015). Prisoners are excused from the requirement to exhaust administrative remedies under such circumstances. *See Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002). For these reasons, **Count 4** shall be dismissed without prejudice against all of the defendants.

## Identification of Unknown Defendant

Plaintiff shall be allowed to proceed with Counts 2 and 3 against the unknown nurse practitioner ("Nurse Practitioner John Doe"). However, this defendant must be identified with

particularity before service of the Complaint can be made on him. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Butler is already named as a defendant and shall be responsible for responding to discovery aimed at identifying this unknown defendant. Guidelines for discovery will be set by the United States Magistrate Judge. Once the name of the unknown nurse practitioner is discovered, Plaintiff shall file a Motion to Substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

## Pending Motions

Plaintiff's Motion for Recruitment of Counsel (Doc. 2) shall be **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for a decision.

Plaintiff's Motion to Compel Menard to Send Filing Fee (Doc. 8) is **DENIED as moot**.

## Disposition

**IT IS HEREBY ORDERED** that **COUNTS 1** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 3** is **DISMISSED** without prejudice against Defendant Wexford Health Sources, Inc. for the same reason.

**IT IS ORDERED** that Defendant **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** with prejudice from this action because the Complaint fails to state a claim against this defendant upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** is subject to further review against Defendants **C. GLADYSE TAYLOR, PAYNE, WEXFORD HEALTH SOURCES, INC.,**

TROST, NURSE PRACTITIONER JOHN DOE, and KIMBERLY BUTLER; COUNT 3 is subject to further review against Defendants **C. GLADYSE TAYLOR, PAYNE, TROST, NURSE PRACTITIONER JOHN DOE,** and **KIMBERLY BUTLER**.

**IT IS ORDERED** that as to **COUNTS 2** and **3**, Plaintiff has neither sought nor been granted leave to proceed *in forma pauperis* in this action, and the Court will not automatically appoint the United States Marshal to effect service of process upon Defendants **C. GLADYSE TAYLOR, PAYNE, WEXFORD HEALTH SOURCES, INC., TROST,** and **KIMBERLY BUTLER**. However, if Plaintiff desires to request the appointment of the United States Marshal to serve process on these defendants, Plaintiff shall file a Motion for Service of Process at Government Expense, within 35 days of the date of entry of this order (**on or before June 23, 2016**). The Clerk of Court is **DIRECTED** to mail to Plaintiff the Court's Pro Se Litigant Guide, containing forms and instructions for filing this motion.

If Plaintiff does not timely file a Motion for Service of Process at Government Expense, it shall be Plaintiff's responsibility to have Defendants **C. GLADYSE TAYLOR, PAYNE, WEXFORD HEALTH SOURCES, INC., TROST, KIMBERLY BUTLER,** and **NURSE PRACTITIONER JOHN DOE** (once identified) served with a summons and copy of the Complaint pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that only a non-party may serve a summons. *See* FED. R. CIV. P. 4(c)(2).

If Plaintiff requests the appointment of the United States Marshal, the Clerk of Court shall prepare a summons and copies of the Complaint and this Memorandum and Order for each defendant, and shall forward the same to the United States Marshal for service. If Plaintiff does not file a Motion for Service of Process at Government Expense within 35 days as ordered, the Clerk shall then prepare a summons for each defendant, and shall forward the summonses and

sufficient copies of the Complaint and this Memorandum and Order to Plaintiff so that he may have defendants served.

Plaintiff is **ORDERED** to serve upon defendants or, if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or defendant's counsel. Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

**IT IS FURTHER ORDERED** that, with respect to a defendant who no longer can be found at the work address provided by Plaintiff, if the United States Marshal is appointed to serve process pursuant to a motion by Plaintiff, the employer shall furnish the United States Marshal with the defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for effecting service of process. Any documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file or disclosed by the Marshal.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings, including a decision on Plaintiff's Motion for Recruitment of Counsel (Doc. 2) and a plan for discovery aimed at identifying Defendant Nurse Practitioner John Doe.

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 19, 2016**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**